OPINION
{¶ 1} Nathan L. Smyth appeals from his conviction and sentence on charges of felonious assault with a firearm specification and having a weapon while under disability. In his sole assignment of error, Smyth contends the jury's guilty verdicts are against the manifest weight of the evidence.
 {¶ 2} The present appeal stems from a fight between Smyth and Derrick Tolbert outside an apartment building at approximately 9:00 p.m. on December 18, 2003. The fight appears to have been precipitated by a dispute concerning Michael Lynn Pounds. Smyth and Pounds were good friends, and she had been seeing him socially. At the same time, however, she and Tolbert shared a sometimes-rocky relationship and had a child together. On the night in question, the parties do not dispute that Smyth approached Tolbert and struck him in the head while he was placing his infant daughter in a car seat. The disputed issue is whether Smyth struck Tolbert with a large black handgun known as a .357 caliber "Desert Eagle" or whether he merely struck him with a fist.
 {¶ 3} Tolbert testified at trial that as he was placing his daughter in her seat, he noticed Smyth's cousin, Michael Mattison, standing to one side of him wearing a dark hooded sweatshirt. Tolbert explained that he then heard a noise from the other direction and started to turn around. As he did so, Tolbert stated that Smyth hit him in the head with what felt like a piece of steel. According to Tolbert, the blow momentarily "dazed" him and he fell back into the car. He then heard Smyth say, "Here, cuz," and pass what Tolbert recognized as a black Desert Eagle handgun to Mattison. Tolbert testified that Mattison then pointed the handgun at him while Smyth proceeded to punch and kick him.
 {¶ 4} A resident of an upstairs apartment, Mark Martin, also testified for the State. Martin explained that he looked out of his window and watched as Mattison and Smyth approached Tolbert's car. Martin told the jury that he saw Smyth punching Tolbert and trying to remove him from the car while Mattison waived a handgun around. Mattison then saw Smyth kick Tolbert on the ground outside the car. Martin testified that he did not remember seeing Smyth with the handgun.
 {¶ 5} For his part, Smyth admitted striking Tolbert but denied using or even touching the handgun. According to Smyth, he merely engaged in a fistfight with Tolbert while Mattison held the weapon. Pounds also testified for the defense. She told the jury that she came out of her apartment and observed Smyth striking Tolbert with his fists. Pounds stated that she never saw Smyth or Mattison with a handgun at all.
 {¶ 6} The remaining witnesses were detective Daryl Smith, officer Christopher Wiggins, and officer Robert Cleaver. Smith testified that Smyth was under indictment for another handgun-related offense on December 18, 2003. Wiggins and Cleaver testified about their investigation of the fight and their discovery of a loaded black Desert Eagle handgun that appeared to have been hidden in a utility box outside the apartment.
 {¶ 7} On appeal, Smyth argues that Tolbert's testimony is not credible and that the weight of the evidence supports a finding that he did not touch the handgun. When a conviction is challenged on appeal as being against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 8} Here we cannot say that the evidence weighs heavily against Smyth's convictions. Although Smyth stresses that Tolbert did not actually see the initial blow that struck him, Tolbert testified that it felt like he was hit with a piece of steel rather than a fist. Right after being hit, Tolbert heard Smyth say, "Here, cuz," and watched as Smyth passed a black handgun to Mattison. In light of this testimony, the jury quite reasonably could have inferred that Smyth hit Tolbert with the handgun before handing it to Mattison.
 {¶ 9} We also are unpersuaded by Smyth's argument that Tolbert's injuries were not severe enough to have been hit with a large handgun. Tolbert received a knot on his head and testified that he felt "dazed" by the blow. Contrary to Smyth's argument, the record contains no evidence indicating that a blow to the head with the handgun necessarily would have cracked Tolbert's skull or rendered him unconscious.
 {¶ 10} With regard to the testimony from the other witnesses, the jury reasonably may have found Tolbert's testimony to be more credible than Smyth's. Both men had felony records, and both men had possible motives to lie. We do not believe that the jury clearly lost its way in assessing the relative credibility of Tolbert and Smyth. The jury also reasonably may have disbelieved Michael Lynn Pounds. She denied even seeing a weapon at the scene despite testimony from the other witnesses, including Smyth himself, that at least Mattison possessed the handgun. The record also contains testimony that Pounds refused to speak to police after the incident. In addition, the jury reasonably could have found her biased in favor of her "good friend" Smyth and against Tolbert, who she claims had been abusive toward her.
 {¶ 11} The most persuasive evidence in Smyth's favor came from Mark Martin, a seemingly unbiased neighbor who watched the fight from his window. Martin testified that he saw Mattison waiving the handgun as Smyth punched and kicked Tolbert. He did not recall seeing Smyth with the handgun. Given the darkness of the night and his vantage point from a second-story window, however, the jury reasonably may have reconciled Martin's testimony with Tolbert's by concluding that Martin simply missed seeing Smyth's single blow to Tolbert's head with the black handgun before handing it to Mattison.
 {¶ 12} Having reviewed the record, weighed the evidence and all reasonable inferences, and considered the credibility of the witnesses, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. The evidence does not weigh heavily against Smyth's convictions. Accordingly, we overrule his assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.
Judgment affirmed.
Wolff, J., and Fain, J., concur.